IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

PI'AR VEGA GREEN,                                  Case No. 6:25-cv-01662-MC

        Plaintiff,
                                                   OPINION AND ORDER
      v.

PROCTOR AND GAMBLE,

        Defendants,

_____

MCSHANE, Judge:

Self-represented Plaintiff brings several claims for relief based on the allegation that Defendant Proctor and Gamble's ("P&G") mouthwash product discolored his teeth. Defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and for failure to state a claim under 12(b)(6). To continue, Plaintiff must file a Second Amended Complaint alleging that Defendant has sufficient contacts with the State of Oregon to support general or specific personal jurisdiction. Meanwhile, for the foregoing reasons, Defendant's Motion to Dismiss under 12(b)(6) is DENIED in part and GRANTED in part.

## SUMMARY OF FACTUAL ALLEGATIONS

P&G manufactures and distributes Crest Pro-Health Mouthwash. First Am. Compl. 1, ECF No. 8 ("FAC"). Plaintiff purchased the mouthwash at his local store during the summer of 2024. *Id*. at 2. He studied the product's label before using it. *Id*. Cetylpridinium chloride ("CPC") was listed as an inactive ingredient in the mouthwash. *Id*. After forty-five days of using the product, Plaintiff noticed "fecal colored brown" discoloration on his teeth. *Id*. After approximately sixty days of using the product, he struggled with loss of taste and discoloration on his tongue. *Id*. The

1 – OPINION AND ORDER

brown staining on his teeth appears to be permanent. *Id*. Plaintiff thus feared "his author and modeling career were going to take a serious loss due to the brown staining on his teeth" and he "went into a deep depression[.]" *Id*. at 2, 5.

Plaintiff sought the advice of Dr. Martin Addy, Professor of Periodontology "at one of the nation's leading dental colleges." *Id*. at 2. Dr. Addy's research suggests the "active ingredient in Pro-Health, cetylpridinium chloride (CPC), causes extrinsic staining of the teeth and/or taste impairment in some proportion of Pro-Health users." *Id*. Plaintiff claims Defendant "intentionally removed CPC from the active ingredients portion of the labeling and had placed it as an inactive ingredient." *Id*. at 3.

## LEGAL STANDARD

### I.    Personal Jurisdiction

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff must prove that jurisdiction is appropriate. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). The plaintiff need only prove a *prima facie* case if, as here, judgment is to be made based on written materials rather than an evidentiary hearing. *Id.* A *prima facie* case must provide more than "bare allegations." *Id.* However, the Court takes undisputed statements in the complaint as true and resolves disputes stemming from affidavits in favor of the plaintiff. *Id*

### II.    Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must containsufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atl.Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S.

662, 663 (2009). The factual allegations must present more than "the    mere possibility of misconduct." *Id.* at 678.

When considering a motion to dismiss, the court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant. *Burgert v. Lokelani Bernice Pauahi Bishop Tr.*, 200 F.3d 661, 663 (9th Cir. 2000). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. If the complaint is dismissed, leave to amend should be granted unless "the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## III.    Rule 9(b)

To allege fraud or mistake, Federal Rule of Civil Procedure 9(b) requires a party "state with particularity the circumstances constituting fraud or mistake." "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). A plaintiff's allegations "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

## **DISCUSSION**

## I.    **Personal Jurisdiction—Rule 12(b)(2)**

Defendant P&G first moves to dismiss Plaintiff's Amended Complaint for lack of personal jurisdiction. Mot. 1, ECF No. 14. Plaintiff's response solely focuses on subject matter jurisdiction without addressing Defendant's personal jurisdiction concerns. Resp. Mot. Dismiss 1, ECF No. 19. Unless it is "absolutely clear" that leave to amend is futile, a self-represented litigant must

3 – OPINION AND ORDER

receive notice of the complaint's deficiencies and be given an opportunity to cure before dismissal. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). Plaintiff must file a Second Amended Complaint that properly pleads personal jurisdiction within sixty (60) days of this Order. Failure to do so may result in dismissal.

In the absence of an applicable federal statute governing personal jurisdiction, a district court must apply the law of the state in which it sits. *See* Fed. R. Civ. P. 4(k)(1)(A); *Panvasion Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Oregon law authorizes personal jurisdiction to the extent permitted by the Due Process Clause of the U.S. Constitution. *See* Or. R. Civ. P. 4L. To comport with the requirements of due process, a court may only exercise personal jurisdiction over a non-resident defendant if that defendant has sufficient "minimum contacts" with the forum state, such that the exercise of personal jurisdiction would not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations and quotation marks omitted). Plaintiff must establish P&G's minimum contacts through a showing of either general or specific jurisdiction. *Schwarzenegger*, 374 F.3d at 801.

General personal jurisdiction exists when a defendant is domiciled in the forum state or his activities there are "so continuous and systemic as to render it essentially at home[.]" *Daimler v. Bauman*, 571 U.S. 117, 127 (2014) (citations and quotation marks omitted). Alternatively, specific jurisdiction exists when the claim for relief arises directly from a defendant's contacts with the forum state. *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). Courts in the Ninth Circuit apply a three-part test to determine whether the exercise of specific jurisdiction over a non-resident defendant is appropriate: (1) the non-resident must either "purposefully avail" itself of or "purposefully direct" its activities toward the forum state; (2) the claim must "arise[] out of or relate[] to" the defendant's forum-state activities; and (3) the exercise

of jurisdiction must be reasonable. *Schwarzenegger*, 374 F.3d at 802. If a plaintiff establishes the first two prongs of the test, the burden shifts to the defendant to "present a compelling case" that exercising jurisdiction would not be reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

To continue with his claims, Plaintiff must file an updated Complaint alleging facts sufficient to demonstrate general or specific personal jurisdiction. In the spirit of judicial efficiency and economy, and assuming Plaintiff will file a Second Amended Complaint to address personal jurisdiction, this Court next examines Defendant's Rule 12(b)(6) arguments.

## II. Motion to Dismiss—Rule 12(b)(6)[1]

Plaintiff brings several claims against Defendant: (1) strict product liability; (2) "deceptive acts and practices"; (3) fraud; (4) unjust enrichment; (5) personal injury; and (6) intentional misconduct. FAC 4–5. Defendant moves to dismiss Plaintiff's Amended Complaint based on a failure to state claims upon which relief can be granted. Mot. 2. Plaintiff's strict product liability, Unlawful Trade Practices Act, fraud, and unjust enrichment claims survive dismissal; his remaining claims do not. Consequently, for the reasons discussed below, Defendant's Motion to Dismiss is DENIED in part and GRANTED in part.

### 1. Strict Product Liability

A plaintiff in Oregon may bring a product liability action against a "manufacturer, distributor, seller or lessor of a product for damages for personal injury . . . .arising out of: (1) Any design, inspection, testing, manufacturing or other defect in a product; (2) Any failure to warn

---

[1] Defendant asks this Court to recognize its submission of a Crest Pro-Health Mouthwash label under the doctrine of incorporation by reference. Mot. 8. Plaintiff replied that Defendant's submission "bears no resemblance to the bottle" purchased by the Plaintiff. Reply 1, ECF No. 21. At the motion to dismiss stage, a court *may* treat certain documents as part of a complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). This Court declines to resolve a genuine dispute of material fact by judicial notice or incorporation by reference at this stage.

regarding a product; or (3) Any failure to properly instruct in the use of a product." ORS § 30.900. One who sells a defected product that is "unreasonably dangerous to the user or consumer" is strictly liable for physical harm caused by that condition, if the "seller or lessor is engaged in the business of selling or leasing such a product" and the "product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold[.]" ORS § 30.920. Plaintiff successfully pleads a strict product liability claim under a failure to warn theory.[2]

A product's warning is adequate when it is "in such form that it could reasonably be expected to catch the attention of the reasonably prudent [person] in the circumstances of its use" and "the content of the warning must be of such a nature as to be comprehensible to the average user and to convey a fair indication of the nature and extent of the danger to the mind of a reasonably prudent person." *Anderson v. Klix Chem. Co.*, 256 Or. 199, 207 (1970), *rev'd on other grounds*, *Phillips v. Kimwood Mach. Co.*, 269 Or. 485 (1974). A plaintiff must allege that the manufacturer had "reason to anticipate danger from the product's particular use." *Vollrath v. DePuy Snythes Business Entities*, WL 2326933, at *2 (9th Cir. 2023); *Waddill v. Anchor Hocking*, 149 Or. App. 464, 473–74 (1997), *rev'd on other grounds*, 330 Or. 376 (2000).

Here, Plaintiff alleges that Defendant distributes and sells Crest Pro-Health Mouthwash. FAC 1. He alleges that the mouthwash reached him as a consumer as P&G intended. *Id*. at 3. He alleges that "the active ingredient CPC was mislabeled as an inactive ingredient" in the mouthwash. *Id*. Plaintiff further avers Defendant "failed to place a warning label which would allow plaintiff to be aware of the dangers of using the product which resulted in physical and physiological injuries to Plaintiff Green." *Id*. And he alleges that Defendant *knew* that CPC is an

---

[2] Plaintiff labels his first claim as "Strict Product Liability" and his second claim as "Failure to Warn[.]" FAC 3–4. As written, this Court understands both claims as asserting the same strict product liability claim. If Plaintiff intends to bring a product liability claim under a theory of *negligence* as well, he may amend his Amended Complaint to clarify his theories of liability.

6 – OPINION AND ORDER

active ingredient in Crest Pro-Health Mouthwash with the potential to stain teeth but labeled it as inactive anyway. *Id*. An ordinary consumer of mouthwash surely does not contemplate that its use would discolor teeth long-term, especially when the "label claimed to strengthen, whiten, and protect teeth." *Id*.

Curiously, P&G suggests that Plaintiff's claim fails because he does not support his factual allegations with exhibits or evidence at this stage. Mot. 9. However, Plaintiff's plausible factual *allegations* are enough. *Iqbal*, 556 U.S. at 663. At this step, his allegations are minimally sufficient to state a claim for strict product liability in Oregon.

### 2. Deceptive Acts and Practices

Plaintiff next contends that Defendant engaged in "deceptive acts and practices[,]" which this Court understands as a claim under Oregon's Unlawful Trade Practices Act ("UTPA"). FAC 4. In furtherance of this claim, Plaintiff reiterates that P&G sold a "hazardous product" after it "knowingly mislabeled the product and failed to place a warning label on the product to inform consumers of the dangers" using the mouthwash. *Id*.

To bring a UTPA claim under ORS § 646.638, a plaintiff "must prove that (1) the defendant committed an unlawful trade practice enumerated in ORS 646.608; (2) the plaintiff suffered an ascertainable loss of money or property; and (3) the plaintiff's loss was caused by the defendant's unlawful trade practice." *Bohr v. Tillamook Cnty. Creamery Ass'n*, 373 Or. 343, 348–49 (2025). A defendant must willfully perform an unlawful trade practice. *Id*. at 348.

### A. Unlawful Trade Practice and Willfulness

In Oregon, a person engages in unlawful trade when they perform an act under ORS § 646.608(1). While Plaintiff does not cite a specific provision of the statute, his allegations are reasonably received as a violation of ORS § 646.608(1)(e). Under ORS § 646.608(1)(e), a person

engages in an unlawful trade practice if they represent that "goods … have … characteristics, ingredients, uses, benefits, quantities, or qualities that the … goods … do not have[.]" The provision aims to prohibit misrepresentations about the attributes of goods for sale. *State ex rel Rosenblum v. Living Essentials, LLC*, 371 Or. 23, 38 (2023) (emphasis omitted).

An actor willfully violates the statute if they "knew or should have known" that their conduct was a violation. ORS § 646.605(10). A plaintiff's "factual allegations must somehow suggest the defendant acted willfully at the time of the alleged misconduct[.]" *Miller v. WinCo Foods, LLC*, 2020 WL 66933149, at *7 (D. Or Sept. 3, 2020), *report and recommendation adopted*, 2020 WL 6685697 (D. Or. Nov. 12, 2020).

Plaintiff alleges that Defendant willfully misrepresented the qualities, uses, and ingredients of its Crest Pro-Health Mouthwash. At the crux of Plaintiff's Amended Complaint is his contention that P&G represented that Crest Pro-Health Mouthwash would "strengthen, whiten, and protect teeth." FAC 2. However, because Defendant "intentionally removed CPC from the active ingredients portion" of the mouthwash's label, P&G "deceiv[ed] the consumer relating to the side effects of the product." *Id*. at 3. Plaintiff plausibly alleges that Defendant willfully committed an unlawful trade practice enumerated in ORS § 646.608.

## B. Ascertainable Loss and Causation

Plaintiff alleges an ascertainable loss caused by Defendant's unlawful trade practice as well. An "[ascertainable] loss required for a UTPA claim must be specifically of 'money or property, real or personal.'" *Pearson v. Philip Morris, Inc.*, 358 Or. 88, 117 (2015) (quoting ORS § 646.638(1)). Noneconomic damages (e.g., physical pain or emotional distress) are insufficient. *Id*. And "the unlawful trade practice must have caused the ascertainable loss that the plaintiff suffered." *Id*.

Plaintiff's Amended Complaint can be liberally construed as bringing a "purchase price theory" to establish ascertainable loss. *Clark v. Eddie Bauer LLC*, 371 Or. 177, 188 (2023). He bought the mouthwash with the understanding that it would strengthen, whiten, and protect his teeth. FAC 2. By purchasing the allegedly mislabeled mouthwash, Plaintiff suffered a loss of money caused by the unlawful trade practice. Plaintiff suitably constructs a UTPA claim under ORS § 646.608(1)(e); Defendant's motion to dismiss this claim is denied.

### 3. Fraud

Plaintiff additionally alleges that Defendant committed common law fraud by "moving CPC to the inactive ingredients listing in order to avoid placing a warning label on the product to inform consumers" about the risk of the mouthwash staining teeth and causing taste impairment. FAC 5. This Court understands Plaintiff as bringing an affirmative misrepresentation claim. To state a claim for affirmative misrepresentation under a theory of fraud, a plaintiff must allege:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury.

*Conzelmann v. Nw. Poultry & Dairy Prods. Co.*, 190 Or. 332, 350 (1950).

Defendant argues that Plaintiff's claim fails because he does not identify a specific representation by P&G. Mot. 12. However, Plaintiff's Amended Complaint can be liberally construed to properly allege a "who, what when, where, and how of the misconduct charged[.]" *Cafaso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). Once again, Plaintiff alleges that CPC is an active ingredient in Crest Pro-Health Mouthwash. FAC 2. He alleges that despite P&G knowing that CPC is an active ingredient, the company intentionally removed CPC from the active ingredient list on mouthwash labels so consumers would not be aware of the side effects caused by CPC. *Id*. at 3. Finally, Plaintiff alleges that his reliance on the

9 – OPINION AND ORDER

intentional misrepresentation resulted in damage—the cost of the mouthwash, stained teeth, professional consequences, etc. *Id*. Even under Rule 9(b)'s heightened standards, Plaintiff minimally states a claim for common law fraud. Defendant's Motion to Dismiss Plaintiff's common law fraud claim is denied.

### 4. Unjust Enrichment

Plaintiff also brings a claim of unjust enrichment arising out of Defendant's alleged fraudulent omission of CPC as an active ingredient of its Crest Pro-Health mouthwash. FAC 5. He asserts that the mislabeling allowed Defendant to "avoid negative sales and make a massive profit[.]" *Id*. Specifically, as Plaintiff sees it, Defendant unjustly received and retained money from him when he purchased the mouthwash bottles. *Id*. His allegation is sufficient to support an unjust enrichment claim at this stage.

Courts conduct a case-by-case analysis for unjust enrichment claims, examining "established legal categories of unjust enrichment as reflected in Oregon case law and other authorities to determine whether any particular enrichment is unjust." *Larisa's Home Care, LLC v. Nichols-Shields*, 362 Or. 115, 132 (2017). Fraud is an established legal category. *Id*. at 133 ("A conclusion that one party has obtained benefits from another by fraud is … one of the most recognizable sources of unjust enrichment." (quoting Restatement (Third) of Restitution and Unjust Enrichment § 13 cmt. a)). Because Plaintiff has suitably alleged fraud under an affirmative misrepresentation theory, he may also maintain a claim for unjust enrichment. *See Leyden v. J. Crew Group, LLC*, 2025 WL 895702, at *13 (D. Or. Apr. 1, 2026). This Court declines to dismiss Plaintiff's unjust enrichment claim.

///

///

### 5. Intentional Misconduct and Personal Injury

Finally, Plaintiff supplies separate claims for "intentional misconduct" and "personal injury[.]" FAC 4–5. As Defendant notes, these claims read more as supplemental arguments for other claims than standalone actions. Mot. 15. Plaintiff does not link these claims to any statutory or common law causes of action. Nor does Plaintiff respond to Defendant's attacks against these claims. *See* Resp., ECF No. 19. Because Plaintiff fails to state "cognizable claims for relief[,]" Defendant's Motion is GRANTED as to his "intentional misconduct" and "personal injury" claims. *Stewart v. Mortgage Elec. Registration Sys's.*, WL 3734108 at \*5 (D. Or. Nov. 4, 2009) (dismissing claims that do not state cognizable claims for relief."); FAC 4–5.

### CONCLUSION

Plaintiff has sixty (60) days from the date of this Order to file a Second Amended Complaint establishing personal jurisdiction. If Plaintiff fails to meet this deadline, his Complaint may be dismissed with prejudice. Should Plaintiff adequately allege personal jurisdiction, Defendant's Motion to Dismiss, ECF No. 14, is DENIED as to Plaintiff's product liability, Unlawful Trade Practices Act, fraud, and unjust enrichment claims. Defendant's Motion to Dismiss is GRANTED as to all remaining claims.

IT IS SO ORDERED.

DATED this 27th day of May 2026.

> \_\_\_\_\_/s/ Michael McShane_____
> Michael McShane
> United States District Judge